Our third and final case is 23-1732, Koppers Performance Chemicals, Inc. v. Argonaut Midwest Insurance Company. Ms. Locklear. Good morning, Your Honors. May it please the Court. Laura Locklear here today on behalf of Koppers Performance Chemicals, Inc., formerly known as Osmos Wood Preserving Company of America, Inc. This matter concerns the availability of insurance coverage for my client, Koppers, a manufacturer of treated wood under four policies of insurance issued by Argonaut Midwest Insurance Company with respect to an underlying action, a lawsuit filed by Plaintiff Riley for personal injuries allegedly incurred by exposure to treated wood. The trial court, in applying Hawaii law, determined that Argonaut did not owe a duty to defend Koppers in the underlying lawsuit. This appeal submits that the trial court failed to interpret the insurance policies according to their clear and plain terms and according to Hawaii law, the doctrines of incontra preferentum, which required all ambiguities be construed in favor of coverage. The two main respects in which the court's interpretation were in error were, number one, by effectively imposing a geographical limitation on the nationwide coverage afforded by commercial general liability policies, and two, by limiting coverage to named insured entities listed on the declarations page. So, on the second point, is it your position that reference to doing business as entities or companies or whatever you might call them cannot limit the coverage to the entity that is doing business as another? Or is it that here, the way that's done applies only to the Griffin entity? So, Your Honor, we think that obviously there are instances where coverage can be limited by a DVA. Sure, an individual doing business as an entity would be entitled to coverage only for operations undertaken on behalf of the entity. There are cases cited by Argonaut for exactly that point. The problem with this declarations page and the named insured description on here is that it is simply not clear. Coppers takes the position, we would read as Your Honor indicated, that the identification of the entity as Osmos Wood Preserving Company of America, Inc., comma, and Griffin Forest Products creates that separation such that the DVA at most could only modify any coverage available to Griffin Wood Industries, Inc. However, there are multiple other ways to read this endorsement, right? It is a possibility that all four entities are named and afforded coverage, each in their own right. Particularly here, where Hawaii Wood Preserving Company and Osmos Pacific, Inc. are not trade names of either Osmos Wood Preserving Company of America, Inc. or Griffin Forest Industries, Inc. So we have a declaration, a named insured description that on its face either provides coverage without limitation to Osmos, the successor of which is my client Coppers, or it is ambiguous. It is simply unclear. There are plenty of different ways that Argonaut could have made clear who was entitled to coverage under this policy. One we see very commonly is a named insured endorsement, clearly identifying the entities that are insured under the policy. That's not here. There's also nowhere in this policy that states that Osmos Wood Preserving Company of America, Inc. is entitled to coverage only for operations under the DVA. That's nowhere in the policy. The court effectively, in coming to this conclusion, reads into the policy something that is not there. One other thing that I would point your honors to, in particular respects to this issue, among others, also I think it's very applicable to the geographical limitation that the court reads into the policy, is the products hazard exception that appears in the policy, JA-292. With this particular endorsement, Argonaut had the ability to limit its liability for bodily injury arising out of a named insured's products. The endorsement applies to limit coverage in connection with either, number one, the use of any premises described in this endorsement. That takes you to the geographical limitation or to any operation described in this endorsement conducted by or on behalf of the named insured. Argonaut very easily could have written in here in a description of premises or operations, this policy does not provide coverage to Osmos Wood Preserving Company of America except for operations of the DBAs enlisted in there. Under policy interpretation law in general, and specifically in Hawaii, Argonaut has the duty to create a clear policy. It has the obligation to make sure what is excluded is clear and unambiguous. Its failure to do that automatically requires a finding in favor of coverage for coppers. Well, that's only the case if you can also satisfy the question as to the information provided with respect to the duty to defend. I want to get to the issue of the pleadings and what it said because the claim here is, at least in the complaint, was that the alleged injuries occurred as a result of the claimants adult activities in the woodworking and fencing business. Activities which are postdated the dates of the four policies in question. So what's your best argument for why these policies that were issued 30, 40 years ago would apply to an allegation with respect to the allegations that were put in the complaint. I have quite a few reasons, Your Honor, but I want to start with what are what coppers believes is a fundamental misapplication of the duty to defend in this case. So the court, in concluding that there was not a duty to defend, suggested that the complaint was obligated that the complaint needed to say there was exposure in the policy period or that the alleged injuries arose out of Hawaii operations. That's not the law in Hawaii. Hawaii's law is an impossibility standard, and this is stated explicitly in the dairy road case. It is the burden of the insurer on a motion for summary judgment on the duty to defend to prove that it would be impossible for Mr. Riley to recover from coppers for any claim coming within the coverage of the policy. That takes me to the allegations of the complaint, Your Honor. I understand how the court could read the complaint as alleging workplace and workplace injury. However, the complaint allegation rule in Hawaii does state that you're looking at the facts pled and not necessarily the causes of action. So if we look at the facts that are pled in the complaint, one, that Mr. Riley was 35 years old. Going back, that opens up the possibility of exposure to the plaintiff during the time frame of Argonauts policies. Number two, the complaint says that the manufactured substances, quote, to which Mr. Riley was exposed and with which Mr. Riley worked. Counsel, can I interrupt you on that? I mean, I appreciate the arguments, and we've read some of those in the briefs. Assume, I think, that just for this question, that there's the complaint unambiguously does not include his infant exposure. And I know you resist that. I'm not saying that's our decision. I just want you to assume that. Then we go to the law that kind of asks whether I think it's Argo's duty to consider the deposition that was sent with the complaint. And I've read a lot of the cases cited there. And what's your best case or best cases about how Argo has a responsibility to consider something outside pleadings that unambiguously do not apply to the infant claim? I think what the court should consider is the trial court actually did determine here that the allegations of the complaint, which Your Honor takes to be workplace injury, are contrary to the deposition testimony provided, which indicates, right, that Mr. Riley was exposed from the time of birth. The district court has already found those allegations to be contradictory and put that in the traveler's order that's in the record before the court. So what we look to then are a series of cases in Hawaii. Annenberg is one where the court must consider extrinsic evidence in the event of either ambiguity in the policy, excuse me, ambiguity. And I'm asking you to assume there is ambiguity in the allegation. Correct. Either ambiguity in the allegation. I'm asking you to assume there is none. Or if the allegations of the complaint are contrary to the extrinsic evidence that either has been provided to the insurer. Does Derry Road not walk that back? I don't believe so, Your Honor. The case you're talking about is an intermediary court decision, correct? Yes, Your Honor. The Annenberg cases that are the Annenberg case that is cited in our appeal is a district court case from 2020. That's the district court. I thought I was thinking about another Hawaii case. So in that case, the underlying action alleged negligent infliction of emotional distress when a man attempted to enter a woman's dressing room. There were cross motions for summary judgment there after an insurer issued an ROR. In those cases, in most of these cases, the insurer is defending before it then comes to seek a D.J. from the court. Here, Argonaut did not do that. They did not defend at any point to evaluate these issues. The court considered the complaint allegation rule, as Your Honor is here, that the allegations of the complaint and the deposition testimony to demonstrate that there was a conflict or an ambiguity. Can I ask, Ms. Luckler, you mentioned the traveler's order, and Judge Gergel issued at least two orders, in this case, maybe more, but two that I'm aware of that dealt with the same issue, but applying different substantive law. South Carolina law in one, Hawaii law in the other. And with respect to South Carolina law, he clearly found that it's appropriate to look beyond the pleadings to decide the extent of coverage in a policy. With respect to Hawaii law, however, he found that notwithstanding all of the dicta, which maybe he characterized it as such, and others have, no binding case law in Hawaii requires or allows or suggests that you look beyond the pleadings to decide the extent of coverage. Do you disagree with that?  What's the case that says, that holds with respect to facts like these, that a court is required to look beyond the pleadings? I think that does go to the Derry Road case, which indicates that the insurer is obligated to investigate and to consider facts known to it that are contrary to the allegations in the complaint. I've seen all kinds of cases that say that, but I don't find a case that actually applies that. Is Derry Road one of those cases? The Derry Road case does a fair amount of application of that. In that case, the underlying car accident was the underlying action. Counsel, on Derry Road, the holding relates to using extrinsic evidence to disclaim coverage. Correct. It says that if you don't disclaim coverage by using, if the allegations plausibly implicate coverage, you don't look at extrinsic evidence to disclaim coverage, particularly when that evidence might be disputed at trial. So, Derry Road says that. I didn't see a case that has what we have here, which is allegations that I think, yeah, I know you disagree, are a stretch at best to cover the policies, but you have extrinsic evidence that might implicate the policies. I didn't see in the Hawaii case that does that. Is there one? Your Honor, we would cite to the cases in our reply that do create this obligation to look beyond the complaint allegations if that information provided is contrary to the allegations of the complaint. And I don't think there can be any dispute, but that the allegations, if the court is to read the complaint allegations as completely precluding any possibility of coverage under the Argonaut policies as then having the information from the insured say, no, absolutely. I do contend. I was exposed during the period, the period of the policies. Those things can't exist in the same world. Either. It is contrary or it's not. And Hawaii law is clear. If it is contrary, you must consider it. Thank you. Miss Locklear. Gotcha. Thank you, Your Honors. Or defendant appellee Argonaut Midwest insurance company. Your Honor, this case is about whether for Argonaut insurance policies by coverage from which provide coverage from June 1st, 1979 through December 1st of 1982 provide coverage to this Charleston bodily injury lawsuit. We will request the court from the district court and as well reason opinion for 2 specific reasons. And the 1st is that the applicable applicable underlying complaint, the Charleston complaint does not allege bodily injury during the policy periods. The 2nd is that the applicable underlying complaint does not allege bodily injury for which an Argonaut insured for its operations are liable. We think the district court ruled properly on both grounds. However, either 1 is sufficient for this court to uphold the district court. On the 1st issue. Can I get you to start on the 2nd? I'm sorry to reorient you. But, um. Let's assume the policies indicate that they apply to Hawaiian entities. Um, that's disputed, but they apply to Hawaiian entities. It seems it's 1 thing. I mean, even if they do. Apply to Hawaiian entities. Does is there a duty to defend when it's possible that the exposure. Resulted from those Hawaiian entities, so the Hawaiian entities still are liable for nationwide bodily injuries. And I don't know factually, whether that's possible, but from at least the face of the complaint and the face of the policies, it seems like, even if you're right that those apply to Hawaiian entities, we could have an injury here in South Carolina and it be covered. I think that's right. Your honor. I think if that was the situation and that there was a. For example, a piece of treated wood that come why? 4000 miles across the continental U. S. To Charleston, and that piece of wood caused the injury. I think that's outside the realm of any likely possibility, but supposedly factually possible that that might be a situation where provided. The underlying complaint alleged something arriving at a piece of treated wood like that. We would have a situation where there might be coverage, so just to follow that in, it might dovetail us back to the 1st point you're making. Um, yeah, that might be factually disproved later and that might. Eliminate and indented the obligation, but it wouldn't necessarily eliminate your duty to defend. Is that right? It would not, but I think, and then we get to the 1st, 1st point you were that I redirected you from, which is does the complaint. Alleged injuries related to those policies that were in place at the time. Yeah, the point if wasn't it, but that's right. And I think there's an important point to make here and that is that the actual. Applicable underlying complaint alleges 1 very key important point that I think shows the quantities cannot have been liable. Or what the underlying Charleston complaint is is alleging and that is that copper is described as a chemical manufacturer. In the actual body of the complaint. Why, and these were not chemical manufacturers. We know that from the vast amount of. Underwriting materials, we know what those entities did. They, they treated. Would, and they provided pest exterminate services. That's a pretty, that's a pretty fine line. And I mean, yet the description of the company doesn't preclude a variety of operations. So, it seems to me that's a. That would be a pretty tight line on the duty to defend maybe, maybe, maybe some. So, but that's, I mean, I could see you say any entity, you'll say a general managers, a car manufacturer, and they, that. Facts alleged something other than the manufacturing. It would seem to me, you'd say, well, that can't be the case because you just refer. To their general description that seems that seems awful fine. And I understand that there's a few other factors in the record though, that I think help bolster this. And 1 is that coppers at the time. Actually had policies that covered chemical manufacturing. That was a listed hazard listed risk and some of their. Policies that covered as most as a whole. Why, and these were specifically described as wood preserving companies, not chemical manufacturing. So that's element 1 element 2 and the underwriting materials. We see the inspections of the Hawaii entities, only the Hawaii. And they describe that they do not transport their products. So I think that's another factor that shows the impossibility there. Okay, can I ask a question related to where I think I ended with your colleague, which was just for the purpose of this question? I want you to assume. Yeah, the complaint unambiguously does not apply to childhood injuries. It's a workplace injury. And and so the complaint doesn't on itself, create a duty to defend. In this case, when the tender went, when the, when the defense was tendered. It was done with that original complaint and with deposition testimony that. Arguably suggest exposure during that childhood period. And there is Hawaii wall in the. I don't know if I'm saying it right. The Bay, you Dan case. The intermediate court of why that does talk about is for colleagues said if there are facts. Extrinsic facts that are in conflict with the complaint that are known or reasonably ascertainable. There's the duty to look at that. Now, dairy farm walks that back, but it really what it says is you can't this claim coverage because of that. So, I don't know that it eliminates this question we have here of whether you can look to. Um, whether you cannot or not. I shouldn't say this 1, whether you can ignore extrinsic evidence. Given to you that would conflict with the allegations. What's your authority that you can ignore that when it was sent to you with the complaint? You know, I think the order by judge Gergel discusses 1 of those authorities and that's. The case, I mean, district court case, not. Interpreting Hawaii law, but not, um, not a Hawaii decision. I would grant that. Your honor. I think that the analysis there is very thorough and it explains why there's a distinction. And I think there's a few other factors that that show us why. Um, this case is different 1st of all. In this case, we have a complaint that unambiguously. Excludes coverage and the Hawaiian line of cases the way I read them. They discuss situations where the complaint has some question about, for example, when the bodily injury occurred and whether it falls within the categories. And I could be misplacing my facts a little bit, but I believe the case may have involved a property damage situation. Whereas we involve a bodily injury. I don't know that that's determinative, but it's at least. Uh, I think something that's probative. And another factor here is the actual policy language itself. The policy language provides for coverage when there's a look for defense coverage. If there's a lot of a lawsuit that is seeking, it's a present tense word, a lawsuit that is seeking damages under the bodily or bodily injury covered by the policy. That means that it's not a deposition testimony that is seeking. Or alleging exposure, it's gotta be a lawsuit that is actively seeking. That type of damages. It's just, yeah, this is a case that I didn't see. I mean, the facts here, I didn't see I get you. The district court case may get close to that. It's just, you know, why he has a lot of presumptions in favor of coverage and here you have. Yeah, that position testimony that looks like it came in the same envelope. So, it's almost like I got something in the complaint here. No coverage. I got something with it that says maybe coverage and I can kind of toss that in the trash can and I'm good because I got this unique Hawaii law. And so that's an interesting position and I don't, I don't read the law. Is saying you can just toss a deposition piece of testimony in the trash. If the complaint is ambiguous, if you have a complaint that is not. Clear about when the actual damages start, then you probably should consider that deposition says that the complaint is ambiguous because it suggests both exposure. Uh, because of chronological age, and then actually interacting with the product. I mean, that's how she would have us read the complaint and I suppose. We do have an obligation to read the complaint as as broadly as can be reasonably read. Right? I think that's right. Is that just unreasonable? I think that going to the idea of an exposure is unreasonable. And I, I believe it's actually impossible under the wording of the complaint and I start off with. An interesting factor we dependent on. Go about what the insurance company views it as whether it's impossible or not. I don't think it's just the insurance company that I think judge carefully analyze analyze this and found that as well. But the power is the test, whether or not or whether or not the insurance company views it as impossible. I believe under Hawaii law. The question is whether there's a legal possibility of coverage and I, I don't know that it's just the insurance company that views it that way. All right. Let me ask you another question. You agree that when the insurance company sent its denial letter, it knew the information in the excerpts from the deposition. It was certainly in the insurance company's possession. I believe that is accurate. Well, did they know it or did they not know it? Can they read or can they not read? They can read and I believe that they would have that information available to them. Okay. Thank you. And your honor. They would have had an information in front of them, but they'd already issued a denial denial letter reserved rights denial letters extensive and that it. Preserves and not just the right of the insurance company, but of all parties to. To preserve the denial letter they once they receive, didn't they respond once they receive the complaint and the deposition excerpt? That's right. And when they responded and denied coverage, I mean, I realize this may not foreclose other arguments, but, but they didn't mention this argument. About exposure during the time that the. The plaintiff was a child, it just referred to the geographic issues. Correct? I believe that's correct. The geographic issues and the issues and the actual entities insured. That's right. Preserving the right to rely on all portions of the policy. When your company looks at this complaint. And they look at the dates of its coverage and the question is. Could there be any liability or exposure? Between the time this person is born and they're 4 years old. So, you would look at your company would look at the complaint with that in mind. Are there any allegations. That might make us, there might be liability between the time he's born and he's 4 years old. And that's that's the view they would take of the complaint. They've got any information. They would also take, I think the position of not only are there allegations that potentially. Could be broad enough to include exposure for infancy, but are there allegations in the complaint that exclude that possibility? And that's what we have here. We have. Information the complaint right off the bat, and it's a verified complaint signed by Mr. Riley and his wife. It's not just a complaint submitted by an attorney, but a verified complaint that says. Mr. Riley was married at all times relevant. To the allegations in the lawsuit and under South Carolina law at the time, if my reading is correct, you couldn't be married unless you were 16 years old or old. It also is not in the hills. That's right. That's right. Maybe. Maybe things are different there. The, the other allegations in the complaints that I think still show impossibility are the theories of liability in the complaint are based on being able to read warnings, being able to understand warnings, being able to read and rely on. Uh, marketing being able to purchase chemically treated wood and being able to work in the fence making industry. So, I think all of those exclude any possibility of coverage under these policies. That so, um, you seem to put a bit of a gloss on the potential for looking beyond the pleadings. Under Hawaii law, if there's some ambiguity potential. The coverage and the complaint, and it's entirely appropriate you say. Under Hawaii law to consider the deposition excerpt in this case. But I don't read judge gurgles order is, you know, suggesting that it seemed like he threw a black letter line said, it's either in the pleadings or it's not. That's what Hawaii law says end of story. So is that wrong? I don't think it is wrong. I. I think he actually carefully analyze that he went through the case law. He went through, um, I believe multiple paid analysis. So I'm clear what what's wrong with the fact that Hawaii law. Imposes a black letter rule that if it's in the pleadings, if it's not the pleadings, you don't look any further. Is that your view? A little bit different. I think my view is that under the black letter law. Why? The complaint allegation controls, but if you can't tell what the complaint says, if there's so and so was in a car accident, it doesn't have a date on there, but you've got a letter or an accident report for you. It says, here's the date. I think that's helpful information, and I don't know that judge Gurgles order found differently than that, but I believe what judge Gurgles order found was that you look at the complaint. And if there's no possibility of coverage within the 4 corners of the complaint. Then the analysis is done, but that that that complaint. That's what he said about Hawaii law. Correct. Because he didn't say that about South Carolina law. That's correct. Now, how is that reading? If that's what he said, consistent with this and I'm going to read specifically from the. By a Dan case, and this is this is this is what it says as a further elucidation of this duty, we concur that an investigation beyond the pleadings is required. When the allegations made in the pleadings. Differ from the facts known to or readily ascertainable by the insurer. He just responded to judge tracks alert that, you know, the insurer knew the information from the deposition. That suggests exposure claim to the time. Yeah, the point of was a child, and so it seems like that's pretty straightforward. Evidence that not only can you, but you must do it when you have that information. So, then you got the question is okay, that's an intermediary court. Is there Supreme Court that disclaims that rules it. And I looked hard at the dairy road case, and I talked to you about this earlier. It looks like it certainly walks it the general rule back, but really in the context of denying coverage. So, I'm just not seeing anything in Hawaii law that disclaims that in the factual context we have here. And, you know, I believe by done was walked back the dairy road. Walked it back and perhaps not even just walked it back, but. Explained the full context of what we have here and the context being. You can't have a lawsuit. That seeks damages if there's not a lawsuit actually seeking those damages. I think that's the policy. Uh, not just the policy, but under why law, you've got to consider the actual language of the insurance contract. And the insurance contract doesn't provide test doesn't provide coverage. For something that's not in a lawsuit, the only lawsuit we have here is the lawsuit that Mr. Riley filed and that lawsuit. Unambiguously excludes coverage. Thank you. There's no further questions. Thank you. Mr. miss Locklear. That's some rebuttal. Yes, your honor, I would like to kind of continue our discussion about the duty to defend. This seems to be an issue that the court would like some additional discussion on. So, I think it's super important what your honor pointed out, which is that the insurer in its denial of coverage did not deny coverage based on a contention that the claims within the in the complaint did not trigger coverage from a timing component. That was not a basis of the denial and I think that's incredibly telling what may be telling, but it's not determinative. Right? Because in a, in a reservation of rights, I've read gazillions of those my time and they're pretty much give the ability to assert other claims. Maybe, maybe it's informative that that 1 in front of mine, but isn't that kind of the, as far as it goes? Well, I hate to cross pollinate here, but Harley's bill in South Carolina would say otherwise. Right? That as an insurer, you are obligated to identify the basis on which you are reserving your rights. And if you do not do that, clearly and effectively, you waive. I think that also kind of comes out in Hawaii law that if you deny your duty to defend when it comes to the duty to indemnify, there's a presumption of coverage. So that breach of the contract obviates any coverage defenses, we would argue down the road. I want to walk back just a little bit. The court asked, did judge find it unreasonable to see whether or not there was exposure to the plaintiff that does not appear anywhere in the in the court's opinion, right? That that it was an unreasonable reading of the complaint in that way to get to what my colleague suggests is the right outcome here. He's asked you to consider things that the court cannot consider on the duty to defend stage the underwriting. Other policies, when we look at the duty to defend and the duty to identify, there are basically 2 different schools of thought. 1 is you have a strict 4 corners rule. You can only look at the complaint. And the policy, and if the complaint does not. Trigger the duty to defend, you can have no defense in those states, though, you may have a duty to indemnify even if you don't have a duty to defend Texas is 1 of those states and the policy behind that is if the complaint isn't well pled. But there's actually coverage under the policy based on the facts you will have to honor your duty to indemnify. Hawaii, like South Carolina, is not a strict 8 corner state. What they say is there are exceptions to the 8 corners rule. The court is entitled to look beyond the allegations of the complaint in certain circumstances. South Carolina is relatively unrestricted. You can look to the complaint, but you cannot use extrinsic evidence to deny a duty to defend. I would argue Hawaii is exactly the same. That 1 case indicates to us, you have to consider extrinsic evidence. If there's a possibility of coverage, if the complaint is ambiguous or silent, or if as here, the information and complaint is contrary to information known or reasonably known to the carrier. Why that makes sense is states like Hawaii and South Carolina. If you have a, if there is no duty to defend, there's no duty to indemnify. If you're entitled to look beyond the allegations of the complaint and find the facts, you may have a duty to defend, but ultimately no duty to indemnify. And so what is being pushed here and not recognized, I think, is that Hawaii actually is an exception to the 8 corners rule. I want to go back very quickly to the Rehimaki case, which is what Judge Bergall cites. How about I answer my question? Yes, Your Honor, I'd be delighted. Can you comment on the relevance of the Standard Oil case to this issue from Hawaii? I think the Standard Oil case here, Your Honor, is built upon by the later cases that we look at here. So it does create kind of the fundamental body of case law that we have about the interpretation of policies. But ultimately— But his answer to the question is still good law. Yes. Yes, Your Honor. Yes, Your Honor. If there are any further explanation or questions of the court otherwise, I'll thank you for your time. Thank you, Ms. Laughlin. Yes, Your Honor. I want to thank both counsel for their able arguments in this last case. We'll come down and recounsel, and then we're going to come back to the bench and for a little bit answer a few questions before Mother Nature falls. And then I think we're going to take a picture and then begin our conference. So we'll come down, recounsel, and then return to the bench.
judges: Albert Diaz, A. Marvin Quattlebaum Jr., William B. Traxler Jr.